**Leslie Herman KERBER, a Minor, by Cecelia Kerber, Next Friend, Appellant,**

v.

**AMERICAN MACHINE & FOUNDRY COMPANY, d/b/a Union Machinery Company, Appellee.**

**No. 19418.**

United States Court of Appeals Eighth Circuit.

June 3, 1969.

Richard E. Martin, of Miner, Martin & Speiser, St. Joseph, Mo., for appellant and filed brief and reply brief.

Clarence G. Strop, of Strop, Watkins, Roberts & Hale, St. Joseph, Mo., for appellee and filed brief.

Before VAN OOSTERHOUT, Chief Judge, and VOGEL and HEANEY, Circuit Judges.

VOGEL, Circuit Judge.

Leslie Herman Kerber, a minor, brought this action by his next friend, asking money damages from American Machine & Foundry Company (hereinafter "AMF"), d/b/a Union Machinery Company. Jurisdiction is based upon diversity of citizenship and the requisite amount in controversy. The substantive law of Missouri controls.

Kerber, an employee of Continental Baking Company, St. Joseph, Missouri, was severely injured while working on a bakery machine (the "Pan-O-Mat") manufactured by AMF. Kerber alleges that the machine was negligently designed and manufactured and that such negligence was the proximate cause of his injury.

During the trial, Liberty Mutual Insurance Company, workmen's compensation carrier for Continental, having paid workmen's compensation benefits to Ker-

ber, asked that it be allowed to intervene in the action. The motion was subsequently granted. At the close of plaintiff's evidence, the trial court granted AMF's motion for a directed verdict. Kerber alone now appeals from the subsequent overruling of his motion for a new trial. We affirm.

Kerber, a young man just under 19 years of age at the time of the accident, had been a Continental Baking Company employee for one and a half months, had previously worked on the Pan-O-Mat four or five times, and, for his age, had considerable experience with machinery.

The Pan-O-Mat is used for the making of buns and rolls. Basically, rolls of dough are dropped down a floured chute into cups and then pans which move on a conveyor belt. Three employees operate the machine—an "operator", a "front-end man", and a "pan setter". Kerber, a pan setter, set the pans in place at the center of the machine, corrected "stick-ups" and "doubles", and floured the chute. A stick-up is a ball of dough stuck on the chute due to lack of flour and doubles are two balls of dough in one cup. Kerber testified that the easiest, fastest and best method to remove doubles was from the back of the machine, that this was a safe method of removal, and that he had removed doubles at the back of the machine on the night of the accident. Kerber had never been instructed to remove doubles from the side of the machine.

On the side of the Pan-O-Mat is an opening in which the chains and sprockets for the conveyor are exposed. AMF manufactured the machine with a 25″ x 38″ cover or shield to cover the opening. With the cover on, it was not possible for a person to place his hand into the open area. This cover is held in place by pins at the top rim of the opening and is easily removable for cleaning. Daily cleaning and weekly airing are required by Missouri law (V.A.M.S. §§ 196.195 and 196.270) and daily cleaning is directed by AMF's written operating instructions. There were no warning signs on or near the cover stating that the machine should not be operated with the cover off. The machine was not equipped with a safety device which would render it inoperative when the cover was removed. The Pan-O-Mat was designed without an emergency power cut-off switch near the side opening— the closest such switch being approximately nine feet away.

On January 15, 1967, the day of the accident, Kerber had been on duty since 5:30 p. m. At 11:30 p. m., he set the pans and, as he was walking to the back of the machine to clean out stick-ups and flour the chute and because the cover was off the side opening, he noticed a double through the opening. In order to remove the double, Kerber reached with his left hand into the open area and grabbed the extra dough ball to put it into an empty cup. He then noticed a stick-up on the flour chute and, as he reached with his right hand to correct the stick-up, his left hand became caught between the sprockets and chain. He could not reach the power cut-off switch and his hand was mangled before the machine was stopped by one of his co-workers. Kerber testified:

"Q You put it in here (indicating)?

"A Yes, sir.

"Q From the side of the machine?

"A Yes, sir.

"Q Why did you put it in there at that particular area?

"A It was quick to get to. It was just a reflex, a reaction. I was in kind of a hurry.

\* \* \* \* \* \*

"The Witness: I said it was a reaction. It was easy to get to, and I was moving pretty fast around the machine in kind of a hurry."

"Q Will you tell the jury and the Court, please, why you put your hand in that position to reach for the double there instead of going around to the rear of the machine and trying to correct the double there?

\* \* \* \* \* \*

"The Witness: The reason I reached in there is that there was two pieces of dough in one cup, and as I walked by, I saw it, and the fastest way to get it was that way, so I just reached my hand in to correct the double.

"Q (By Mr. Martin [plaintiff's attorney]) If you had not reached your hand in there, and gone around the back of the machine, could you still have reached the double, or would it have been out of sight?

"A I could have probably reached it from the back."

Kerber also testified that he had worked on the machine with the cover both on and off; that he knew the cover's size, the area it covered, and its thickness and composition; that he could see the sprockets and chain when the cover was off; and that he understood and respected the dangerousness of the sprockets and chain.

The trial judge, the Honorable Richard M. Duncan, a judge thoroughly familiar with the law of Missouri, stated in his carefully considered opinion overruling Kerber's motion for a new trial, 300 F. Supp. 1205:

"We believe that the case of Stevens v. Durbin-Durco, 377 S.W.2d 343, 346–348 (Mo.S.Ct.1964) correctly states the applicable rule of law:

" 'The manufacturer of a product which is potentially dangerous when applied to its intended use (citing cases) or reasonably certain to place life and limb in peril when negligently made (citing cases) is under a duty to a remote user to exercise ordinary care in its manufacture, and is liable to a remote user injured thereby if the injury results from a latent defect bespeaking lack of ordinary care in making the product.'

\* \* \* \* \* \*

" '[W]here the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger, there is no liability on the manufacturer.' Under that rule, we do not believe that reasonable men could differ in finding that the danger was not latent or concealed, but on the contrary, it was open, obvious and apparent to all who used it, particularly the plaintiff who had—by his own admission—actual knowledge of the danger and an awareness that he could be hurt if he stuck his hand in the uncovered opening.

\* \* \* \* \* \*

"Not only do we find no liability as a matter of law, but even if there were liability we do not believe that plaintiff could recover because he either was contributorily negligent or else he assumed the risk by choosing to operate the machine with the cover off, removing 'doubles' from the side of the machine rather than from the rear and placing his hand into the uncovered area all done with the knowledge that the uncovered area was obviously dangerous, and that the safer procedure would be to remove the 'doubles' from the rear of the machine."

The case of Stevens v. Durbin-Durco, upon which Judge Duncan relied, is the most recent expression of the Supreme Court of Missouri on the products liability of a manufacturer for injury sustained by a remote user where the machine itself was free of latent defects or concealed dangers. It is of significance that the Missouri Supreme Court concluded its opinion in *Stevens* as follows:

" \* \* \* Accordingly, where the product is free of latent defects and concealed dangers; where the perilous nature of the product and the danger of using it is obvious and not concealed; where its normal functioning creates no danger not known to or appreciated by the user; where it is properly manufactured to accomplish the function for which it is designed, the manufacturer has 'satisfied the law's demands' and is under no duty to make it 'more' safe by providing a built-in safety device. (Citations omitted.)" 377 S.W.2d at 348.

In this case there was no latent defect or concealed danger. The cover for the

side of the machine had to be removable so that the operators could comply with the manufacturer's cleaning instructions and with the law of the State of Missouri. Plaintiff had seen and worked with the machine with the cover both on and off. He was aware of the danger of sticking his hand into the place where it was injured. There was a perfectly safe place for him to remove the doubles at the rear of the machine. Under the controlling law of the State of Missouri plaintiff may not recover against the manufacturer.

Affirmed.