**Anita L. EGELHOFF, Appellant,**

v.

**Linda Jo HOLT, Respondent,**

and

**Kero Metal Products, Inc., Respondent/Cross-Appellant.**

No. 76281.

Supreme Court of Missouri, En Banc.

April 26, 1994.

Rehearing Denied May 26, 1994.

---

Herbert D. Schaeffer, Clayton, for appellant.

David Larson, Thomas H. Davis, Diane M. Beers, Kansas City, Michael R. Baker, Columbia, for respondent.

THOMAS, Judge.

Anita Egelhoff brought an action for personal injuries against Linda Jo Holt and Kero Metal Products. Egelhoff's claim against Holt was submitted on negligence, and her claims against Kero were submitted on MAI 25.04, Strict Liability—Defective Product, and MAI 25.05, Strict Liability—Failure to Warn. The jury awarded Egelhoff $250,000 and found her to be eighty percent at fault, Kero fifteen percent at fault, and Holt five percent at fault. Egelhoff appealed the trial court's denial of her motion for new trial. Kero cross-appealed the trial court's denial of its motion for a judgment notwithstanding the verdict. The Court of Appeals, Eastern District, (1) affirmed the trial court's denial of Egelhoff's motion for new trial and (2) reversed the trial court's denial of Kero's motion for judgment notwithstanding the verdict. Both parties now appeal to this Court. We affirm the judgment of the trial court.

## FACTS

Linda Holt had an aboveground swimming pool in her backyard. The swimming pool, which was manufactured by Kero Metal Products, came with several insertable plastic caps that were designed to cover the top of the pool deck railing support posts. On July 9, 1988, upon entering her yard, Holt noticed that several of these plastic caps were on the ground. She testified that this happened often. Holt picked up these caps and placed them on a table in her backyard. She did not insert the caps back into the railing supports.

After cleaning the pool, Holt invited her tenant, Anita Egelhoff, to go swimming. Egelhoff was in the pool when Holt asked her to help set up a volleyball net. Egelhoff climbed out of the pool onto a narrow deck

and tied the volleyball net to one of the swimming pool's support posts. After securing the net, Egelhoff turned around and lowered herself toward the deck. To assist her in getting back into the pool, Egelhoff reached back and grabbed one of the support posts, which cut her thumb. The pain caused Egelhoff to twist away from the post and fall into the pool. As a result of the twisting fall, Egelhoff claims she injured her back. She has since had therapy and numerous surgeries to treat her back problem.

Egelhoff argues in support of her motion for a new trial that (1) the trial court erred in submitting a comparative fault instruction patterned after MAI 32.28 "because the instruction as given applied to different causes of action against" Kero Metal Products and Linda Jo Holt, and (2) the trial court erred in admitting an edited video tape of Egelhoff at a bar playing pool and dancing.[1] Kero argues in support of its cross-appeal from the trial court's refusal to grant its motion for judgment notwithstanding the verdict that Egelhoff failed to make a submissible case against Kero because: (1) the only evidence that Egelhoff was injured by the support posts on the swimming pool manufactured by Kero came from Holt's deposition testimony, which was inadmissible against Kero, and (2) the swimming pool was modified after leaving Kero's possession.

## THE FORM OF THE COMPARATIVE FAULT INSTRUCTION

■ Egelhoff asserts three points of error with regard to Instruction No. 10, the comparative fault instruction submitted by Kero. At trial, however, Egelhoff's only objection to Instruction 10 was that the evidence was insufficient to support a comparative fault instruction. Although this does not preclude us from reviewing Instruction 10 on grounds other than sufficiency of the evidence, we may consider the failure of Egelhoff to object specifically on the grounds raised in this appeal in determining whether the submission of this comparative fault instruction was

---

1. Egelhoff also asserts throughout her brief that Kero's statement of facts should be stricken for failure to comply with Rule 84.04. There is no merit to this claim because the statement of facts in Kero's brief is relevant to its point on cross-appeal.

prejudicial. *Rule 70.03*[2]; *Hudson v. Carr*, 668 S.W.2d 68, 71–72 (Mo. banc 1984).

■ First, Egelhoff claims that it is improper to give a single comparative fault instruction when there are two defendants, each of whose liability is premised on different theories—strict liability and negligence. There is no merit to this claim. In *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986), this Court held that only one comparative fault instruction should be given when there are multiple defendants. "Under a pure comparative fault system, the plaintiff's negligence is not compared with that of defendant A and then again with defendant B, but rather it is compared with the cumulative negligence of all the defendants." *Id.* This rationale for submitting one comparative fault instruction when there are multiple defendants is persuasive even if there is more than one theory of recovery alleged, i.e., negligence and strict liability. The trial court, therefore, properly submitted one comparative fault instruction.

■ Second, Egelhoff cites to *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986), in arguing that it is improper to submit a comparative fault instruction in products cases alleging strict liability. *Lippard* was decided, however, prior to the enactment of section 537.765, RSMo Supp. 1993, which specifically authorizes fault apportionment in product liability cases. Section 537.765 became effective on July 1, 1987. The alleged injury in this case occurred on July 9, 1988. Thus, section 537.765 is controlling, and it authorized the submission of a comparative fault instruction in this case.

Third, Egelhoff argues that the comparative fault instruction that was submitted failed to track MAI 32.28. Instruction 10 proffered by Kero stated:

In your verdict you must assess a percentage of fault to plaintiff whether or not defendants were partly at fault if you believe:

First, plaintiff knew or by using ordinary care should have known that the plastic cap was missing from the top of the pool deck railing support post and as a result the pool deck railing support post was not reasonably safe, and

Second, plaintiff unreasonably failed to appreciate the danger involved [sic] the use of the pool or the consequences thereof and unreasonably exposed herself to said danger, or plaintiff failed to undertake the precautions a reasonably careful user of the pool would take to protect herself against dangers which a reasonably careful user would reasonably appreciate under the same or similar circumstances, and

Third, such failure directly caused or directly contributed to cause any damage plaintiff may have sustained.

This instruction submits two of the six types of comparative fault specified in section 537.765, which states:

**537.765 Contributory fault as complete bar to plaintiff's recovery abolished—doctrine of comparative fault to apply—fault of plaintiff an affirmative defense to diminish damages—fault defined.**—1. Contributory fault, as a complete bar to plaintiff's recovery in a products liability claim, is abolished. The doctrine of pure comparative fault shall apply

---

**2.** At the time of trial, Rule 70.03 provided as follows:

Counsel need not object to any instructions to be given at the request of any other party or by the court on its own motion or to the refusal of any instructions requested by such party. Specific objections to instructions shall be required in motions for new trial unless made at trial. The making of objections during trial shall not preclude making additional objections to the same or other instructions in the motion for new trial. No general objection to the instructions is required.

Effective January 1, 1994, Rule 70.03 has been amended to require a specific objection at trial to preserve instruction error. The new rule provides:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

to products liability claims as provided in this section.

2. Defendant may plead and prove the fault of the plaintiff as an affirmative defense. Any fault chargeable to the plaintiff shall diminish proportionately the amount awarded as compensatory damages but shall not bar recovery.

3. For purposes of this section, "fault" is limited to:

(1) The failure to use the product as reasonably anticipated by the manufacturer;

(2) Use of the product for a purpose not intended by the manufacturer;

(3) Use of the product with knowledge of a danger involved in such use with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger;

(4) Unreasonable failure to appreciate the danger involved in use of the product or the consequences thereof and the unreasonable exposure to said danger;

(5) The failure to undertake the precautions a reasonably careful user of the product would take to protect himself against dangers which he would reasonably appreciate under the same or similar circumstances; or

(6) The failure to mitigate damages.

The subdivisions of subsection 3 of this statute generally constitute the following defenses:[3] (1) unforeseeable misuse; (2) foreseeable misuse; (3) assumption of the risk; (4) negligent assumption of the risk; (5) contributory negligence; and, (6) failure to mitigate damages. Kero submitted an instruction that included (4) negligent assumption of the risk and (5) contributory negligence. Kero could not submit these defenses solely in their statutory form because such a submission likely would constitute a "roving commission." It was necessary to specify the conduct by Egelhoff that was claimed to constitute the fault; the instruction does so in paragraph second.

Because there is no approved instruction for submitting the defenses encompassed within section 537.765.3, Kero modeled its instruction after MAI 32.28 and the language in section 537.765.3. MAI 32.28, which is a comparative fault instruction for injured invitees, is based on failure to keep a careful lookout. It is helpful as a guide to the type of language and format that has been approved by MAI for submitting acts similar to those submitted in the present case. Here, Kero tracked the general method of submission in MAI 32.28 but (1) made it applicable to the premises where the accident occurred—a swimming pool, and (2) submitted the conduct of Egelhoff and asked the jury to determine if that conduct amounted to negligent assumption of the risk or contributory negligence. This is a proper "Not in MAI" instruction. It submits applicable defenses for claims submitted on the theories of negligence, strict liability—defective product (MAI 25.04), and strict liability—failure to warn (MAI 25.05). However, the MAI committee should consider drafting approved instructions for the submission of the defenses authorized in section 537.765.

## THE SUBMISSIBILITY OF THE COMPARATIVE FAULT INSTRUCTION

Egelhoff's last two arguments deal with sufficiency of the evidence to submit Instruction 10. First, she claims that there was not "a *scintilla* of evidence supporting Kero's proffered and submitted instruction." In analyzing the sufficiency of the evidence to submit an instruction, this Court stated:

An issue submitted in an instruction must be supported by substantial evidence from which the jury reasonably could find such issue.... "In determining the propriety of an instruction, evidence must be viewed in the light most favorable to the submission of the instruction, and a party is entitled to an instruction upon any theory supported by the evidence."

---

**3.** Although section 537.765, RSMo Supp.1993, refers to the six authorized comparative fault submissions in subsection 3 as affirmative defenses, technically they are not affirmative defenses but constitute the basis upon which the jury is to assess comparative fault.

*Vandergriff v. Missouri Pacific R.R.,* 769 S.W.2d 99, 104 (Mo. banc 1989) (citations omitted).

■ Here, there was substantial evidence from which the jury could find that Egelhoff negligently assumed the risk (unreasonable failure to appreciate the danger involved in use of the product or the consequences thereof and the unreasonable exposure to said danger) or that Egelhoff was contributorily negligent (the failure to undertake the precautions a reasonably careful user of the product would take to protect herself against dangers that she would reasonably appreciate under the same or similar circumstances). Egelhoff testified that she was not looking where she put her hand when she cut it on the post and that if she had been looking she would have never put her hand on top of the post because "it was very sharp." This evidence is particularly important in establishing that the sharp edge upon which Egelhoff sustained her cut was in plain view when the caps were removed from the posts. Moreover, Egelhoff testified she frequently swam in Holt's swimming pool. Since Holt testified that she had problems almost daily with the caps coming off, it could be inferred that Egelhoff had constructive knowledge of the danger from the exposed posts. This constitutes sufficient evidence to submit on negligent assumption of the risk and contributory negligence.

■ Egelhoff also claims there was insufficient evidence to submit Instruction 10 because Kero failed to prove she possessed "knowledge respecting the latent defect in [Kero's] handrail." Section 537.765 does not require actual knowledge to submit negligent assumption of the risk or contributory negligence. Negligent assumption of the risk requires only that Egelhoff "knew or by using ordinary care should have known" of the defect. Contributory negligence requires only that Egelhoff fail to act as a "reasonably careful user of the product would" in that situation. Constructive knowledge is sufficient for a submissible case under either theory; there is no requirement that Egelhoff have actual knowledge of the allegedly defective post.

Instruction 10 was submissible under the evidence in this case.

## VIDEO TAPE

■ Egelhoff asserts error regarding the admission of a video tape of her dancing and playing pool at a party that occurred approximately 1½ years after the injury. It was introduced into evidence to show Egelhoff's range of motion and flexibility, which she claimed was limited as a result of her injury and numerous surgeries. Egelhoff claims on appeal: (1) the video tape was not properly authenticated, (2) it was unduly prejudicial, and (3) it was not used to impeach "but rather was offered and received into evidence as a prior consistent statement." At trial, however, Egelhoff's objection to the admission of the video tape was that it had no probative value and that it was "inflammatory." Specifically, counsel stated:

My objection goes back to sections of those two things that were in there, Your Honor. I mean, they are not of any probative value. I don't see where holding up a blouse has anything to do with showing any great movement of her back; and then the turning slightly to unzip pants and then zipping them back up again. I think they are inflammatory and don't really add anything. *I don't have any objection to the rest of it.* [Emphasis added.]

Egelhoff's objection at trial cannot be expanded to raise new issues on appeal. *Mo. Evidence Restated,* § 103, pp. 1–11 (MoBar 2d ed. 1993). Generally, "allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." *Rule 84.-13(a).* Because counsel stated that he did not "have any objection to the rest" of the video tape, our review will be limited to whether the video tape's probative value was substantially outweighed by the danger of unfair prejudice.

■ The trial court is afforded broad discretion in assessing the admissibility of video tapes, and the trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *McPherson Redevelopment Corp. v. Watkins,* 782 S.W.2d 690, 692 (Mo.App.1989). "An abuse of discretion is 'a judicial act

which is untenable and clearly against reason and which works an injustice.' " *Id.* (Citation omitted.) "The issue to be determined in admitting or rejecting a video tape is whether it is practical, instructive, and calculated to assist the trier of fact in understanding the case." *Id.*

■ The trial court found that the video did show "some movement there contrary to what's been testified to ..." by Egelhoff. After reviewing the video, we agree that it is probative as to Egelhoff's mobility and the extent of her injuries following the accident. Egelhoff testified that she was unable to work as a cosmetologist because she could not twist her body sideways, hold her hands up in the air long enough, or bend over to shampoo hair. She further testified that she could not stand for long periods of time, bowl, play golf, swim, do yard work, or dance without enduring pain. The video tape is the next best thing to allowing the jury to personally observe Egelhoff's movements at a time when she was not aware she was being observed. The movements shown in the video are natural, appear unrestricted and are obviously occurring at a time when she is not thinking about her injury. Evidence of this nature is highly relevant to the jury in assessing Egelhoff's injuries.

Egelhoff does briefly lift up her shirt in the background of the video, unzip and zip her pants, and take her bra off under her shirt and put it in her pocket. At no time was Egelhoff exposed in the video. All of these incidents were extremely brief. We find that the video tape's probative value substantially outweighs any danger of unfair prejudice. Therefore, the court did not abuse its discretion in admitting the video tape.

## KERO'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Kero asserts two points of error regarding the trial court's denial of its motion for judgement notwithstanding the verdict. Kero claims that Egelhoff failed to make a submissible case against it because: (1) the only evidence that Egelhoff was injured by the support posts manufactured by Kero came from Holt's deposition testimony, which was inadmissible against Kero, and (2) the swimming pool was modified after leaving Kero's possession. The trial court did not err in denying Kero's motion.

In determining whether Egelhoff made a submissible case, we examine only the sufficiency of the evidence on the issues that Egelhoff submitted to the jury. *Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 954 (Mo.App.1991); *Kuehle v. Patrick,* 646 S.W.2d 845, 846–47 (Mo.App.1982). We review the evidence in the light most favorable to Egelhoff and give Egelhoff the benefit of all reasonable inferences arising from the evidence. *Id.; Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863 (Mo. banc 1993). The defendants' evidence is to be disregarded unless it aids Egelhoff's case. *Id.*

## HOLT'S DEPOSITION

Kero claims that the trial court should have granted its motion for a directed verdict at the end of Egelhoff's evidence because the only evidence presented by Egelhoff in her case in chief that she cut her hand on the swimming pool's support post came from Holt's deposition, which was read at trial. Kero claims its objection to this deposition should have been sustained. This action was originally filed in September 1988 against Holt and Midwest Pools, Inc. Midwest pools, having gone out of business, was never served. Egelhoff amended her petition in July 1990, naming Kero Metal as a defendant. Holt's deposition was taken in January 1989, approximately 1½ years before Kero was joined as a party. Kero was not present at the deposition and did not receive notice of it.

On the second morning of trial, Egelhoff proposed to read certain excerpts from the deposition of Holt, which were offered as admissions. Kero objected to Holt's deposition being used against it because the deposition was taken prior to the time Kero was a party to the lawsuit and Kero had no notice of the deposition or opportunity to appear. The trial court overruled the objection, and the deposition was presented to the jury. It

contained testimony from Holt that Egelhoff was injured when she came in contact with the pool's support post. Kero claims on appeal that the trial court erroneously overruled its objection and that Holt's deposition was the only evidence that Egelhoff was injured on Kero's product. Kero is wrong on both counts.

Rule 57.07(a) provides that the deposition *"may be used against any party who was present or represented at the taking of the deposition or who had proper notice thereof, . . . ."* (Emphasis added.) However, when a deposition is offered as an admission, it is only admissible against the deponent. Thus, there is no requirement that the parties to the lawsuit other than the deponent have notice of a deposition which is used as an admission. It is common practice to admit portions of depositions or excerpts of testimony from other trials as admissions against a party to a lawsuit even though the other parties involved had no connection whatsoever to the case from which the admission is taken.

Moreover, admissions are not even required to be statements under oath. They are commonly excerpts from informal conversations or writings. The only requirement for an admission is that it be a relevant statement of a party offered by the party's opponent.[4] Kero was correct in its objection that Holt's deposition should not have been admitted against Kero, but it gave the wrong reason for the objection. Under those circumstances, the trial court will not be reversed for overruling the objection. *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974). To be considered on appeal, an objection must be specific and "call the attention of the Court to the ground or reason for the objection."

Egelhoff is also aided by the rule that applies when there is a general offer of evidence that is admissible against one party but not admissible against another or that is admissible for one purpose but not for another. Under these circumstances, the guiding principle is, "Heads I win, tails you lose in favor of the trial judge." The party the trial court rules against must make the offer or objection specific by pointing out the limited admissibility of the evidence. Otherwise, nothing is preserved for appeal, and the trial judge will be affirmed whether the evidence was admitted or excluded. Kero was required to point out that, although this evidence was admissible as an admission against Holt, it was not admissible against Kero. Kero's objection based upon failure to have notice or to be present at the deposition is a "red herring." Kero failed to make the correct, specific objection; therefore, the evidence was properly admitted against Kero. *Id.*

Furthermore, in evaluating on appeal whether Kero's motion for directed verdict should have been sustained, Egelhoff is entitled to the benefit of any evidence produced by the defendants, even though it may have been offered after the trial court ruled on Kero's motion for a directed verdict. At trial, Holt testified in person that she saw Egelhoff reach back and cut her thumb on the swimming pool's support post. Although this evidence came out on direct examination by Holt's attorney, it is still admissible against Kero. In Missouri, when a defendant does not stand on his motion for directed verdict at the close of the plaintiff's evidence, the reviewing court examines all of the evidence in determining the sufficiency of the plaintiff's case. *Gibson v. Newhouse,* 402 S.W.2d 324, 326–27 (Mo.1966), *citing Flanigan v. City of Springfield,* 360 S.W.2d 700, 704 (Mo. banc 1962), and *Daniels v. Smith,* 323 S.W.2d 705 (Mo.1959). Defendants take the risk that if they present evidence that fills any holes in the plaintiff's case, the case will not be reversed for insufficiency of the evidence even if the trial court should have granted the motion for directed verdict on

---

4. Although admissions are sometimes misleadingly referred to as "admissions against interest," there is no requirement that they be "against interest" in the same sense that a "declaration against interest" is required to be "against interest." Mo. Evidence Restated, § 803 pp. 8–35 (MoBar 2d ed. 1993). At most, there is a requirement that the admission be inconsistent with what the declarant is claiming at trial. This latter requirement is merely a type of relevancy requirement, which recognizes that it would be a waste of time to offer a statement to prove something that a party has already conceded at trial.

the basis of the record at the time the motion was made. This rule is based upon the rationale that the case as submitted does not require the jury to speculate.

In cases where there are multiple defendants, the party seeking a directed verdict must rest on its motion or risk having the evidence adduced by all the defendants fill any holes in the plaintiff's case. *Cf. Gibson,* 402 S.W.2d at 326–27. Kero was required to stand on its motion for directed verdict or risk having the evidence adduced by either itself or Holt fill any holes in Egelhoff's case and make it submissible. It failed to stand on its motion and, therefore, the testimony of Holt can be considered in determining the sufficiency of the evidence.

■ Finally, in addition to Holt's deposition and Holt's testimony, there was sufficient other evidence that Egelhoff cut her thumb on the swimming pool's support post to submit the case against Kero to the jury. As noted earlier, Egelhoff is entitled to the benefit of all reasonable inferences arising from her evidence. *Wion,* 808 S.W.2d at 954; *Kuehle,* 646 S.W.2d at 846–47; *Callahan,* 863 S.W.2d at 863. Egelhoff testified that she reached back while getting into the pool but did not see exactly what cut her thumb. Pictures were admitted into evidence that showed where the support post in question was in relation to Egelhoff when she was getting into the pool. Furthermore, Egelhoff's expert testified that the top of the support post on which Egelhoff allegedly cut her thumb was sharp. The post, with its sharp edge, was admitted into evidence and was inspected by the jury. This evidence and the inferences therefrom are sufficient for Egelhoff to make a submissible case against Kero. It is not necessary to have someone testify that they saw the accident happen and that it was the support post on which Egelhoff cut her thumb. Egelhoff need only create an inference from circumstantial evidence as to the cause of her injury. *Id.*

There was submissible evidence that Egelhoff cut her thumb on the pool's support post. Holt's deposition, her testimony at trial, or the circumstantial evidence were each more than sufficient to make a submissible case against Kero. This point is denied.

## MODIFICATION OF THE CAPS

■ Next, Kero argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because Egelhoff "failed to make a submissible case against Kero Metal under a products liability theory since the pool was admittedly modified after leaving the possession of Kero Metal." Kero claims that some of the caps were "cut" at the base where they are inserted in the support posts. When asked whether one of the caps had been modified, Egelhoff's expert testified: "There's no way to know at what time the change was made. It was not released from the manufacturer that way, I'm sure." Holt also testified at trial that some of the caps were different than others and that they had been that way since the pool was installed.

Specifically, Kero's argument on this point is as follows:

> It was uncontroverted and admitted through the testimony of plaintiff's own expert Mains that a number of the plastic caps were modified after the product left the possession of Kero Metal. The plaintiff could not establish whether or not the cap which was allegedly missing from the post in question was one of the modified caps. Based on the evidence of this subsequent modification and the failure of proof of the condition of the missing cap, plaintiff failed as a matter of law to prove that any causal defect existed at the time the product left Kero Metal's possession. Plaintiff thus failed to make a submissible case. *Klein v. General Electric Co.,* 714 S.W.2d 896, 900 (Mo.App.1986).

Kero fails in its attempt to convert its modification argument into an argument that Egelhoff failed as a matter of law to prove that the defect existed at the time the pool left Kero's possession. The fallacy in Kero's argument is that the defect claimed by Egelhoff is unrelated to the modification claimed by Kero. Egelhoff claims a manufacturing defect. Egelhoff's expert testified that the outside of the support posts conformed to size specifications, but that the posts were to have 16–gauge wall thickness, not 17–gauge wall thickness as manufactured. Seventeen-gauge walls are thinner than 16–gauge walls and, therefore, the insides of the posts were larger than the original specifications. Thus,

the safety caps did not fit properly. Egelhoff's expert concluded that this caused the caps to fall out easily, which exposed the sharp edges on the support posts. Thus, the alleged defects claimed by Egelhoff were that: (1) the 17–gauge metal support posts were not to specifications, (2) the caps did not properly fit the support posts as manufactured, and (3) the sharp edges on the support post were exposed when the caps fell off. These alleged defects were unrelated to the modification claimed by Kero—that the caps were "cut."

All of the defects alleged by Egelhoff existed at the time the swimming pool was manufactured by Kero and entered the stream of commerce. The fact that one or more of the plastic caps were allegedly cut or modified after they entered the stream of commerce is irrelevant under the theory submitted to the jury. There was sufficient evidence for the jury to find that the posts and caps were defective as manufactured regardless of whether the caps were subsequently modified. In other words, there was sufficient evidence from which the jury could have determined that the caps would pop out, exposing the sharp edges of the posts, even if the caps had not been modified. Therefore, Egelhoff made a submissible case because she only needed to proffer evidence that created an inference that the defect existed prior to leaving the hands of Kero. *Patterson v. Foster Forbes Glass Co.*, 674 S.W.2d 599 (Mo.App.1984); *See also Klein*, 714 S.W.2d at 900.

Egelhoff made a submissible case on strict liability—defective product. It is clear from the evidence that the modification relied upon by Kero was separate and distinct from the defect relied upon by Egelhoff. Therefore, the trial court correctly overruled Kero's motion for judgment notwithstanding the verdict.

## CONCLUSION

The judgment of the trial court is affirmed.

All concur.