# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1068
_____

Timothy Farkas

*Plaintiff - Appellant*

v.

Addition Manufacturing Technologies, LLC, formerly known as Mckee-Addision
Tube Forming, Inc.

*Defendant - Appellee*

Overton Industries, Inc.

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2019
Filed: March 11, 2020

_____

Before SMITH, Chief Judge, BEAM and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

Timothy Farkas's fingers were severely injured by a machine that uses a hydraulic clamp to crimp metal tubes. He then filed this suit against Addition Manufacturing Technologies, LLC ("Addition"), the machine designer's successor. The district court[1] found that Farkas failed to provide evidence from when the machine entered the stream of commerce, which is necessary to sustain Farkas's products liability claims. The court granted Addition's motion for summary judgment. We affirm.

## I. *Background*

The machine that injured Farkas's fingers is a tube-end forming machine. To operate the machine, the user inserts a piece of thin pipe known as tube. After inserting tube into the machine, the user presses a foot pedal to activate the hydraulic press. The machine then uses hydraulics to bring clamps around the tube and to shape the end of the tube. The hydraulic press can form tube ranging between 1 inch and 2.75 inches in diameter.

Addition's predecessor manufactured and sold the machine at issue in 1992 to Walker Culver, according to its specifications. At the time of sale, the machine included a point-of-operation guard. That guard consisted of a metal plate that, once lifted, revealed a Lexan pane with a hole slightly larger than the size of tube. The guard prevented the operator's fingers from fitting in the clamp when there was tube in the machine. The guard at the time of the machine's initial sale only applied to the tube size that Walker Culver specified. The machine itself, however, was capable of crimping multiple sizes of tube.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

Various companies bought and sold the machine over the years. Relevant here, a company sold the machine to Farkas's employer in 2014. At that time, Farkas's employer engaged Overton Industries, Inc. to alter the guard in place to accommodate multiple sizes of tube.

While at work, Farkas used the machine to crimp a piece of tube that was smaller than the guard. This allowed Farkas to insert his fingers into the point of operation on top of the tube. When the machine crimped the tube, it also crushed Farkas's fingers. He then filed this diversity suit against Addition and other parties.

Farkas asserts that Addition is strictly liable for the product's design defect, failed to warn about that defect, and negligently manufactured the product. Addition moved for summary judgment, claiming that Farkas failed to provide evidence that the original guard was inadequate at the time of the machine's initial sale. The district court found that Farkas's expert considered the wrong guard because the expert's deposition showed his conclusions relied on the guard present at the time of the injury, not the guard from the time of sale. The court concluded that, without evidence of the initial guard's appropriateness and relevant industry standards, Farkas could not establish any of his claims. *Farkas v. Addition Mfg. Techs., LLC*, 4:17-CV-761 RLW, 2018 WL 6434776, at *8 (E.D. Mo. Dec. 7, 2018). The district court, thus, granted Addition's summary judgment motion. This appeal followed.

## II. *Discussion*

"We review de novo a district court's grant of summary judgment." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1130 (8th Cir. 2014). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Mack v. Stryker Corp.*, 748 F.3d 845, 849 (8th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). We consider "the facts in the light most favorable to the nonmoving party and giv[e] that party the

benefit of all reasonable inferences that can be drawn from the record." *Marlowe v. Fabian*, 676 F.3d 743, 746 (8th Cir. 2012). The parties agree that Missouri substantive law applies in this diversity case. *See Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996).

## A. *Strict Liability Claims*

We first consider Farkas's strict liability claims. To establish a claim for strict liability for product defect, Farkas must offer "proof the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, proof the product was used in a manner reasonably anticipated, and proof plaintiff was damaged *as a direct result of such defective condition as existed when the product was sold*." *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 466 (Mo. 2017) (en banc) (cleaned up) (emphasis added). To establish a strict liability failure-to-warn claim, the plaintiff must prove that

> (1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous *at the time of sale* when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

*Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. 2011) (en banc) (emphasis added).[2] Note that both claims require the plaintiff to show that the product was defective or dangerous at the time of sale. This case turns on that requirement.

_____

[2]Farkas points out that the district court did not address his failure-to-warn and negligent product liability claims. "When a district court fails to address a matter properly presented to it, we ordinarily remand to give the court an opportunity to rule in the first instance." *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 724 (8th Cir. 2019). "But we have refrained from remanding in cases where it is unnecessary on the record before us." *Id.* at 724–25. We find that it is unnecessary to remand here based on the record before us.

During the machine's life, the original guard was lost. Without proof of the sufficiency of the original guard, Farkas cannot show that it was defective at the time of sale. He attempts to satisfy the element by arguing that the original guard was categorically deficient because any such guard is inherently dangerous when the activation switch is a foot pedal. He highlights two reasons. First, the machine can bend multiple sizes of tube, but the original guard only applied to one size, so subsequent users had to remove the guard to use all of the machine's capabilities. Second, a foot pedal allows the operator to have their hands free when using the machine. Those features—in Farkas's opinion—render the machine inherently dangerous, especially when compared to alternatives that require the operator to remove their hands from the point of operation to activate the machine.

The district court found that there was no evidence "that a machine with a foot pedal and a properly-working point of entry guard" was inherently dangerous. *Farkas*, 2018 WL 6434776, at *8. And because Farkas failed to provide evidence that the point-of-operation guard was not working at the time the machine was sold, the court found that Farkas failed to prove that a defective condition existed when Addition sold the machine.

Farkas, citing to multiple places in the record, asserts that a material issue of fact exists. For instance, he points to his expert's testimony, which implies that Addition should have used a light curtain rather than a point-of-operation guard. This could show the existence of an alternative design. Yet Farkas's expert does not conclude that the combination of a foot pedal and point-of-operation guard is inherently dangerous. Just the opposite. Addition asked the expert if there was "ever an appropriate time to have a foot pedal operation along with a hand operation on—on a machine like this?" Dep. of Dr. J. Kenneth Blundell at 5, *Farkas v. Addition Mfg. Techs., LLC*, 4:17-CV-761 RLW (E.D. Mo. Aug. 15, 2018), ECF No. 103-1. The expert responded, "Yes. If—if you have—have the area guarded." *Id.* The question then became whether the machine was properly guarded at the time of sale. The expert could not testify to that, however, because he did not have any information

about the original guard. *Id.* at 8. Instead, he stated the guard that was on the machine at the time of the accident was inherently dangerous and implied that a light curtain was preferable. So the expert's testimony does not show that the machine's design was inherently dangerous or defective at the time of sale.

Farkas also points to a competitor's statement that it manufactures machines with two-hand controls or light curtains and to Addition's testimony that it no longer sells the machine with point-of-operation guards. Again, that evidence shows the effectiveness of alternatives, but it does not indicate that the foot pedal and point-of-operation guard combination was inherently dangerous. Proof that newer machines are safer does not, without more, prove the older machine was inherently dangerous. The same applies to other witness statements, which indicated that the injury would not have occurred if the machine had a light curtain or two-hand control. The district court correctly concluded that this evidence does not create a material issue of fact.

Farkas cites authorities that we find unpersuasive. In *Egelhoff v. Holt*, the Supreme Court of Missouri rejected a modification defense. 875 S.W.2d 543, 552–53 (Mo. 1994) (en banc). There, the plaintiff alleged that she modified caps on the end of metal supports for her above-ground pool. *Id.* But that modification was in response to the defendant's defective product; the caps did not fit on the supports because the caps were for a smaller diameter pole. *Id.* The court found that there was "sufficient evidence from which the jury could have determined that the caps would pop out, exposing the sharp edges of the posts, even if the caps had not been modified." *Id.* at 553.

*Egelhoff* is distinguishable. Had Farkas offered evidence indicating that the machine was inherently dangerous when sold, *Egelhoff* could counter arguments regarding subsequent modifications. But as discussed above, he did not. Further, the plaintiff in *Egelhoff* did not argue that the defendant should have selected a different kind of safety measure. Rather, the plaintiff there showed that the safety measure employed was improperly fitted to the pool support when the product entered the

stream of commerce. *Id.* Here, Farkas failed to provide evidence regarding whether the safety features operated correctly at the time the machine entered the stream of commerce, and his evidence is otherwise inadequate to show inherent danger. *Egelhoff* does not help his case.

Similarly, *G.W.M. v. Flink Co.*, No. 4:08-CV-158, 2009 WL 2337117 (E.D. Mo. July 29, 2009), provides little support. There, the defendants argued that the plaintiff could not prove a defective condition because the relevant guard was missing. *Id.* at *4. The court, however, found that there was a genuine issue of material fact because the plaintiff's expert indicated that the guard "should have been designed out of" the machine. *Id.* Farkas argues that the same should apply here, but his expert's testimony is not as strong. Farkas's expert did not opine that the guard in place at the time of manufacturing should have been designed out of the machine. Rather, he implied that a light curtain was preferable and that the guard that existed at the time of the accident was inherently dangerous. But that was not the relevant inquiry. The relevant inquiry was whether (1) a similarly-guarded machine was inherently dangerous and, if not, (2) whether the guard at the time of sale was adequate. In short, Farkas's expert's testimony failed to establish a triable issue of fact, even under *G.W.M.*, on either issue.

At bottom, Farkas failed to provide facts showing the machine was inherently dangerous or improperly guarded at the time it entered the stream of commerce. Thus, we conclude that he has not established a material issue of fact as to his strict liability claims.

## B. *Negligent Product Liability*

Farkas's negligent products liability claim fares no better. "For products liability to be founded in negligence, the plaintiff must prove the existence of a duty, the defendant's breach thereof, and proximately caused damages." *Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422, 425 (Mo. Ct. App. 1994). We hold that Farkas failed to show that Addition owed him a duty under Missouri law.

"The extent and limits of the duty of a manufacturer of a product dangerous because of the use to which it is to be applied depend upon the nature and character of the defect and of plaintiff's knowledge thereof." *Stevens v. Durbin-Durco, Inc.*, 377 S.W.2d 343, 347 (Mo. 1964).

> [T]he manufacturer of a product which is potentially dangerous when used in its intended fashion . . . is under a duty to the user to exercise ordinary care in its manufacture, and is liable to a user injured thereby *if the injury results from a latent defect* bespeaking lack of ordinary care in producing the product.

*Morrison*, 891 S.W.2d at 426 (emphasis added) (citing *Stevens*, 377 S.W.2d at 346). Important here is the latent defect requirement. "[T]he manufacturer may be held liable if the defect or danger is latent or concealed, but where the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger, there is no liability on the manufacturer." *Stevens*, 377 S.W.2d at 347. "No defect can be considered latent which is discoverable by the exercise of due care or reasonable diligence." *Edwards v. Springfield Coca-Cola Bottling Co.*, 495 S.W.2d 489, 497 (Mo. Ct. App. 1973) (cleaned up).

In *Stevens*, the Supreme Court of Missouri faced the question of whether a load binder—a device which takes the slack out of chains that secure loads on trailers—was negligently manufactured. 377 S.W.2d at 344–46. The binder operated by moving a lever back and forth between an open and closed position, which tightened the chain. *Id.* at 344. The court noted that "[t]he perilous nature of the product was obvious and apparent to plaintiff; its lack of a safety ratchet was plain to be seen." *Id.* at 348. Further, "[i]ts use created no danger not known to and appreciated by plaintiff, an experienced trucker who had used load binders for years and knew and appreciated full well their dangerous characteristics and propensities." *Id.* Because of that, the court found that the plaintiff could not recover from the manufacturer. *Id.*

We have previously applied the *Stevens* rationale. *See Kerber v. Am. Mach. & Foundry Co.*, 411 F.2d 419 (8th Cir. 1969). There, a machine had an opening that exposed the chains and sprockets of a conveyor belt. *Id.* at 420. Reaching through that opening to adjust misplaced dough, the plaintiff's hand was mangled. *Id.* We found that "reasonable men could [not] differ in finding that the danger was not latent or concealed, but . . . was open, obvious and apparent to all who used it, particularly the plaintiff who had . . . actual knowledge of the danger." *Id.* at 421.

The Missouri Court of Appeals has also applied *Stevens*. In *Morrison*, the plaintiffs brought a claim on behalf of an individual who died when a tractor that lacked roll-over protection rolled on him. 891 S.W.2d at 423–24. The court found no latent defect because a lack of roll-over protection "is something open and obvious which is readily revealed merely by looking at a tractor." *Id.* at 427. In addition, the decedent was aware of the dangers of driving without roll-over protection. *Id.* *Morrison* thus indicates that a manufacturer is only liable if the danger is latent. *See id.* at 427–28.

The Missouri Court of Appeals discussed what constitutes a latent danger in *Edwards*, 495 S.W.2d at 497. There, an exploding soda bottle injured a woman. *Id.* at 491–92. The woman essentially argued that the shelves where the bottle was placed were improperly designed because there was no place to store individual bottles. *Id.* at 493. The court ultimately concluded that the plaintiff failed to plead a design defect but noted that "even if . . . the display unit . . . might be said to have been designed with some 'defect' . . . plaintiff's firm position that there was 'a latent defect' cannot be honored." *Id.* at 497.

Farkas failed to establish a latent defect. The danger was not concealed. Rather, the absence of guarding was visible and obvious. As in *Morrison*, where the lack of roll protection was obvious, the lack of guarding was apparent here. And the dangers associated with it were apparent. In *Kerber*, the danger was obvious where the

plaintiff placed his hand into the part of the machine where the conveyor belt's chains and sprockets were located. Here, Farkas placed his hand into the point of operation of a machine that bent metal.

In short, Farkas has not offered evidence that the danger of a tube forming machine to the user's hand was anything but "open, obvious, and apparent." The defect, therefore, is not latent under Missouri case law. Consequently, there is not a material issue of fact regarding his negligence claim.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____