Cleat CRIDER, Movant-Appellant,

v.

STATE of Missouri, Respondent-Respondent.

No. SD 34667

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: October 23, 2017

Appellant's Attorney: Susan L. Hogan, of Kansas City, Missouri.

Respondent'(s) Attorney: Joshua D. Hawley, Attorney General, and Daniel N. McPherson, Assistant Attorney General, of Jefferson City, Missouri.

## WILLIAM W. FRANCIS, JR., J.

Cleat Crider ("Crider"), appeals the judgment of the motion court denying his Rule 29.15[1] motion to set aside his conviction for statutory sodomy in the first degree, for which he was sentenced to 30 years in prison. In one point, Crider asserts the motion court clearly erred in denying his Rule 29.15 motion because trial counsel was ineffective for failing to notify the trial court of juror nondisclosure prior to the hearing on Crider's motion for new trial. Because the motion court's decision to deny the post-conviction motion was not clearly erroneous, we affirm.

1. All rule references are to Missouri Court Rules (2017).

1. Crider was also initially charged with three additional counts of the unclassified felony of statutory sodomy and one count of the unclassified felony of statutory rape in the first de-

### Facts and Procedural History

In reciting the facts of this matter, we view the evidence in the light most favorable to the motion court's judgment. *Day v. State*, 495 S.W.3d 773, 774 (Mo.App. S.D. 2016).

Crider sexually abused a 13-year-old girl ("Victim"), nearly every day from April 2004 to May 2005. In early December 2004, T.D., a friend of Victim's sister, witnessed Crider sexually assault Victim. T.D. later reported the incident and the police were contacted. T.D. gave a statement to police about the incident in May 2005.

Crider was charged with the unclassified felony of statutory sodomy in the first degree. *See* § 566.062, RSMo 2000.[1] A jury trial was held on January 21, 2009.

During *voir dire*, the prosecutor asked whether anyone on the panel was "familiar with [T.D.]?" The prosecutor indicated that her last name had changed, and gave the new last name to the panel. No members of the panel responded affirmatively.

The State put on the testimony of Victim and T.D. in its case in chief, and both described Crider's sexual abuse of Victim. Crider did not testify or put on any evidence. The jury found Crider guilty of first-degree statutory sodomy.

On February 3, 2009, Crider called trial counsel and indicated that the jury foreperson, Juror D.B., knew T.D.'s father. Crider gave trial counsel the names of two former employees of Juror D.B., and said they would know more about the relationship between Juror D.B. and T.D.'s father. Trial counsel passed those names to the

gree, *see* section 566.032, RSMo 2000, but these additional charges were subsequently dismissed by the prosecutor.

Unless otherwise stated, all statutory references are to RSMo 2016.

defense investigator, who interviewed both former employees.

Those interviews yielded the following information: Juror D.B. "might have been in the area[ ]" when the two former employees discussed newspaper accounts of Crider's arrest; that T.D.'s father had some appliances repaired by Juror D.B.'s business; and that T.D.'s father and Juror D.B. had "typical interaction[s] that you have [in] running a business."

On February 9, 2009, defense investigator contacted Juror D.B. Juror D.B. came to trial counsel's office. He was "upset" because he "felt that he had performed his duties as a juror, and, in fact, went against the other jurors who wanted to convict [Crider] just based on his appearance[.]" Juror D.B. had opposed that and "wanted [the other jurors] to look at the facts[ ]" of the case. T.D.'s last name was different from her father's, and Juror D.B. did not deduce that T.D. and her father were related until sometime during the trial.

Juror D.B. said he had fired the two former employees in question because they had smoked "pot" in his place of business. In contrast, Crider said the two former employees were friends, and Juror D.B. had fired them both after one of them had missed too much work. Trial counsel evaluated this information and believed that "either way, they appeared to be disgruntled employees, or it may have affected their credibility and believability with what they were telling me, which was already just general information, not specific information." The investigation did not indicate that Juror D.B. and T.D.'s father had discussed the case, or that Juror D.B. knew anything more than general knowledge

about the case. There was no information to indicate that Juror D.B. "had any kind of relationship with [T.D.] prior to trial[.]"

At the conclusion of the week-long investigation, trial counsel spoke with the district defender about the investigation and whether to include this matter in a motion for a new trial.

On February 10, 2013, trial counsel filed a motion for new trial, but did not include an allegation of juror nondisclosure because: (1) there was no evidence that Juror D.B. knew anything other than general information about the case prior to trial; (2) there was no evidence that Juror D.B. and T.D.'s father had discussed the case prior to trial; (3) the former employees lacked credibility and would be subject to impeachment; (4) Juror D.B. was upset that his conduct as a juror and foreperson were being questioned, he took that responsibility very seriously, and had to persuade other jurors to look at the facts when they wanted to convict Crider based on his appearance alone; and (5) it would be reasonable to believe that Juror D.B. did not recognize T.D.'s name when it was mentioned in *voir dire* since her last name was different than her father's.

On March 9, 2009, the trial court denied Crider's motion for new trial and sentenced Crider to 30 years in prison. On direct appeal, this Court affirmed Crider's conviction in *State v. Crider*, 309 S.W.3d 376 (Mo.App. S.D. 2010), with mandate issuing on May 28, 2010.

Crider timely filed a Rule 29.15 *pro se* "Motion to Vacate, Set Aside or Correct the Judgment and Sentence." Appointed counsel filed an amended motion[2] that

---

**2.** This Court is obliged to independently review the record to confirm compliance with the dictates of *Moore v. State*, 458 S.W.3d 822, 825-26 (Mo. banc 2015). Crider timely filed a *pro se* Rule 29.15 motion on August 9,

2010. On October 4, 2010, the court appointed the office of the public defender to represent Crider. On November 24, 2010, a copy of Crider's Rule 29.15 motion was mailed to the public defender. On December 23, 2010, post-

raised the single claim that trial counsel was ineffective for failing to notify the trial court that a member of the jury had failed to disclose his familiarity with T.D.

On January 25, 2016, an evidentiary hearing was held. On September 9, 2016, the motion court denied Crider's motion finding that Crider failed to meet his burden of showing any bias or prejudice on the part of Juror D.B. The motion court also found that trial counsel was not ineffective for failing to raise the issue of juror nondisclosure to the trial court, and that Crider would not have been entitled to relief had trial counsel brought the claim of juror nondisclosure to the trial court's attention prior to the hearing on the motion for new trial. This appeal followed.

In one point on appeal, Crider asserts the motion court erred in denying his Rule 29.15 motion because trial counsel failed to bring the issue of juror nondisclosure to the trial court's attention prior to the hearing on his motion for new trial.

## Standard of Review

Appellate review under Rule 29.15 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005) (citing Rule 29.15(k)). "Findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court has the definite and firm impression that a mistake has been made." *Id.* We

defer to the motion court's credibility determinations. *Bradley v. State*, 292 S.W.3d 561, 566 (Mo.App. E.D. 2009).

## Analysis

In his sole point relied on, Crider argues that the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because trial counsel was ineffective when he failed to inform the trial court that the jury foreperson failed to disclose his familiarity with State's witness T.D.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential.... A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

conviction counsel entered an appearance and filed a request for extension of time to file the amended motion. On January 6, 2011, post-conviction counsel filed a motion for reappointment of counsel and for an extension of time, for a total of 90 days, to file the amended motion. The court granted that motion on January 6, 2011, and on April 7, 2011, post-conviction counsel filed an amended motion. An evidentiary hearing was held on September 9, 2016, to inquire into whether Cri-

der had been abandoned by post-conviction counsel. The court found that post-conviction counsel's late filing of the amended motion was "neither the result of any negligence by [Crider] nor the result of any failure to act, either intentional or otherwise, by [Crider]." The hearing court found that Crider was abandoned by post-conviction counsel's untimely filing of the amended motion, and the court permitted the filing of the amended motion.

Second, the defendant must show prejudice from his counsel's deficient conduct. *Id.* at 687, 104 S.Ct. 2052. To satisfy this burden, a claimant must show a reasonable probability that but for trial counsel's defective performance, demonstrated in the first component, the outcome at trial would have been different. *Id.* at 694, 104 S.Ct. at 2068.

Here, Crider's amended Rule 29.15 motion imputes a potential, but unfiled, claim for new trial based on Juror D.B.'s nondisclosure of his familiarity with T.D. There are two species of juror nondisclosure: intentional and unintentional. In either instance, allegations in this vein are not self-proving, and the proponent of the claim bears the burden of proof. *State v. McFadden*, 391 S.W.3d 408, 418 (Mo. banc 2013).

The *sine qua non* of juror nondisclosure is proof of the "nondisclosure" itself—that is, a showing of: (1) silence by a potential juror (2) after an "unequivocal question" (3) as to information *known* by that potential juror. *Saint Louis University v. Geary*, 321 S.W.3d 282, 295 (Mo. banc 2009). The proponent of a nondisclosure claim must demonstrate these elements in light of the "entire voir dire examination." *State v. Ess*, 453 S.W.3d 196, 204 (Mo. banc 2015).

Only where nondisclosure is established does the court then proceed to the determination of whether the nondisclosure was intentional or unintentional. *Geary*, 321 S.W.3d at 295. "This determination is left to the sound discretion of the trial court." *Id.*

"Intentional nondisclosure occurs when: 1) there is no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) the prospective juror remembers the experience or that it was of such

significance that the juror's purported forgetfulness is unreasonable." *Creighton v. State*, 520 S.W.3d 416, 422 (Mo. banc 2017) (internal quotation and citation omitted). Where proven, a juror's intentional nondisclosure ordinarily warrants the presumption of juror bias and prejudice to claimant, such that a finding of intentional nondisclosure "is tantamount to a per se rule mandating a new trial." *McFadden*, 391 S.W.3d at 418.

Unintentional nondisclosure contemplates the situation where a juror reasonably misunderstood the question soliciting the nondisclosed information, or where the juror's experience pertaining to the nondisclosed information is "insignificant or remote in time." *Id.* In such instance, a new trial is not warranted in the absence of proof of prejudice arising from the nondisclosure "that may have influenced the jury's verdict." *Id.* (internal quotation and citation omitted).

Crider's claim is unavailing. The transcript of Crider's motion hearing indicates that when trial counsel received information from Crider regarding possible juror nondisclosure on February 3, 2009, trial counsel engaged in a substantive and timely investigation. Trial counsel directed his investigator to interview both witnesses, which defense investigator did. The interviews revealed only attenuated connection between Juror D.B. and T.D.'s father, and strong impeachment evidence against both witnesses as both had been fired by Juror D.B.

Trial counsel interviewed Juror D.B., who indicated he had taken his responsibility as juror and foreperson very seriously: he had, rather than acting as a prejudicial force, admonished other jurors to look at the evidence of the case rather than convicting Crider on his appearance alone. Juror D.B. also revealed strong potential

impeachment evidence against the other two witnesses, in that he alleged he had fired them for smoking "pot" in his place of business.

After a week-long investigation, trial counsel evaluated the matter, in conjunction with the district defender, and concluded there was no evidence Juror D.B. had anything more than general information about Crider's case before trial; there was no evidence Juror D.B. and T.D.'s father had discussed the case before trial; the witnesses to whom Crider had directed trial counsel provided evidence of only attenuated connection, lacked credibility, and would be subject to strong impeachment evidence; Juror D.B.'s conduct reflected that of a person who took his responsibility as a juror seriously and had not prejudiced Crider; and it would be reasonable to believe Juror D.B. did not recognize T.D.'s name because her last name was different from her father's. Accurately discerning that a claim for juror nondisclosure would not be meritorious, trial counsel did not include it in the motion for new trial.

Crider wholly fails to show that trial counsel's investigation was not reasonable. "[Trial] counsel's decision not to pursue [an] issue was made after a thorough investigation of the law and facts and is virtually unchallengeable." *Roberts v. State*, 502 S.W.3d 734, 737 (Mo.App. W.D. 2016). Crider also fails to show that he was prejudiced in that the claim trial counsel did not raise would not have been meritorious. "[Trial] counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim." *McCoy v. State*, 431 S.W.3d 517, 523 (Mo.App. E.D. 2014). The motion court did not clearly err in denying Crider's Rule 29.15 motion for post-conviction relief. Point denied.

The judgment of the motion court is affirmed.

NANCY STEFFEN RAHMEYER, C.J./P.J.—Concurs

JEFFREY W. BATES, J.—Concurs